UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-22061-Civ-WILLIAMS/TORRES

ENTOURAGE CUSTOM JETS, LLC,
f/k/a GENESIS CUSTOM JETLINERS LLC,
and GREAT AMERICAN INSURANCE COMPANY,

      Plaintiff,

v.

AIR ONE MRO, LLC, and
MIAMI EXECUTIVE AVIATION, LLC,
d/b/a SIGNATURE FLIGHT SUPPORT,

      Defendant.

_____/

## ORDER ON DEFENDANTS' *DAUBERT* MOTION

This matter is before the Court on Miami Executive Aviation, LLC's d/b/a Signature Flight Support ("Miami Executive") and Air One MRO, LLC's ("Air One") (collectively, "Defendants") *Daubert* motion [D.E. 66] to exclude the testimony of Entourage Custom Jets, LLC's f/k/a Genesis Custom Jetliners, LLC ("Genesis") and Great American Insurance Company's ("Great American") (collectively, "Plaintiffs") expert, Yves Lavigne ("Mr. Lavigne"). Plaintiffs responded to Defendants' motion on August 1, 2019 [D.E. 73] to which Defendants replied on August 27, 2019. [D.E. 83]. Therefore, Defendants' motion is now ripe for disposition. After careful review

of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's *Daubert* motion is **DENIED**.[1]

## I. BACKGROUND

Genesis is the owner of a 1991 MD87 aircraft (the "Aircraft"). On January 8, 2015, Genesis entered into a General Terms Agreement with Air One. This allowed Air One to provide maintenance and other services to Genesis. On June 7, 2016, the parties entered into a Workscope Agreement to perform maintenance and upgrade work on the Aircraft. Genesis delivered the Aircraft to Air One and at some point, during the night of September 29, 2016 and September 30, 2016, an unknown person burglarized the Aircraft while it was in Air One's possession. The burglars stole components of the Aircraft's avionics system.

The amended complaint alleges that the burglary occurred as a result of Air One's negligence. Specifically, Air One failed to secure the Aircraft, left the passenger boarding stairs next to the Aircraft, which allowed access to the Aircraft, and failed to comply with the U.S. Transportation Security Administration Security Directives. The amended complaint further alleges that Air One failed to have a written security plan, adequate lighting, security cameras, an alarm system, security training for employees, and night security guards.

Genesis immediately reported the loss to its insurer, Great American. The policy had a $500,000 deductible and provided physical damage coverage for the Aircraft, including damages for theft. Under the terms of the policy, Great

---

[1] On January 27, 2020, the Honorable Kathleen Williams referred Defendants' *Daubert* motion to the undersigned Magistrate Judge for disposition. [D.E. 132].

2

American is legally and equitably subrogated to the rights of Genesis to the extent of the payments that Great American made under the policy. Plaintiffs therefore seek to recover the losses they incurred as a result of the theft and have made the following claims against Air One: (1) common law bailment, (2) negligence, (3) subrogation as to common law bailment, (4) subrogation as to negligence, and (5) equitable subrogation.

## II. APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova,*

3

*Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).² The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, its duty is not Ato make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

---

² Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert=s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

4

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

5

properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III. ANALYSIS

Defendants' motion takes aim at Plaintiffs' expert, Mr. Lavigne, who Plaintiffs hired to provide an opinion as to the value of the loss in use for the Aircraft. Mr. Lavigne opined that "the net amount of revenue loss . . . is $3,172,251." [D.E. 66-1 at 11]. Defendants contend that this opinion is inadmissible for many reasons because Mr. Lavigne is unqualified, his methodology is unreliable, and he fails to assist the trier of fact. For these reasons, Defendants conclude that Mr. Lavigne fails every *Daubert* requirement and that he must be excluded.

#### A. *Whether Mr. Lavigne is Qualified*

Defendants' first argument is that Mr. Lavigne should be stricken as an

6

expert because he is unqualified to render an opinion in this case. Defendants acknowledge – based on Mr. Lavigne's summary of his educational and job experience – that he has extensive experience in managing airline fleets in Europe and Africa. But, Defendants argue that he has no experience in managing a charter aircraft in the United States nor any familiarity with the use of a 1991 MD87 aircraft. Defendants suggest that there is a significant disconnect because without, any familiarity with the specific aircraft in this case, he is unqualified to opine on the amounts of damages that Plaintiffs suffered.

An expert may be qualified to testify in multiple ways: "'by knowledge, skill, experience, training, or education'" and "not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1129 (citing *Maiz,* 253 F.3d at 665, 669). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F.Supp.2d 1308, 1314–16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa,* 158 F.3d at 562–63).

Determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise

7

[go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, *14 (E.D .La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 n. 10 (5th Cir. 1999), as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also Martinez v. Altec Indus., Inc.*, 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing,* 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity")).

Here, Defendants complain that Mr. Lavigne is unqualified because he has no experience (1) in the United States, (2) in the operation of an aircraft on a charter certificate, or (3) in the operation of an MD87 aircraft. This is a plausible argument because – while Mr. Lavigne has substantial experience in airworthiness, airline setup, and asset management – his experience was acquired in Europe and primarily on other planes.

But, Defendants' argument is misplaced because "an expert's qualifications need not be narrowly tailored to the precise circumstances of [a] case[.]" *Balthazar Mgmt., LLC v. Beale St. Blues Co., Inc.*, 2018 WL 6928698, at *3 (S.D. Fla. Oct. 30, 2018); *see also Furmanite Am., Inc. v. T.D. Williamson,* 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand.") (citing *Maiz,* 253 F.3d at

8

665). An expert "may testify regarding narrow sub-topics within his broader expertise — notwithstanding a lack of specific experience with the narrower area — as long as his testimony would still assist a trier of fact." *Remington v. Newbridge Secs. Corp.*, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014); *see also Maiz,* 253 F.3d at 665 (11th Cir. 2001) (affirming the district court's decision to permit an economic expert to testify on damages relating to real-estate fraud, even though the expert had no specific real-estate experience, finding the issue of damages was sufficiently within the expert's broader expertise).

Given Mr. Lavigne's education credentials and substantial experience in aircraft asset management, he meets the "relatively low threshold" for an expert to be qualified. *J.G. v. Carnival Corp.*, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (explaining that once there exists "reasonable indication of qualifications," those qualifications then "become an issue for the trier of fact rather than for the court in its gate-keeping capacity")). Mr. Lavigne has, for example, a Master of Science Degree in International Trades, and a Master of Arts Degree in Air Law and Air Transport Economics. He also lectures around the world on aircraft asset management and he has substantial work experience as an aviation consultant on fleets in Europe and Africa.

Defendants nonetheless complain that Mr. Lavigne cannot qualify as an expert because he has no experience with a MD87 aircraft. But, Defendants fail to rely on a single case that requires an economic use expert to have specific

knowledge on the model of an aircraft before he or she can opine on a topic related to it. Instead, "a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F.Supp.2d 1328, 1331 (S.D. Fla. 2013). That is, so long as the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)). Because Mr. Lavigne meets this threshold with a wealth of knowledge related to aircraft economics, Defendants' motion to exclude Mr. Lavigne as unqualified is **DENIED**.[3]

### B. *Whether Mr. Lavigne's Opinions are Reliable*

Defendants' next argument is that Mr. Lavigne's opinions are unreliable because he lacks any dependable methodology or scientific analysis. Defendants claim, for instance, that Mr. Lavigne has been unable to provide any example of another MD87 aircraft operated in the United States under a charter certificate at the hours, price, or profit that he suggests the Aircraft could have been operated. Defendants also contend that Mr. Lavigne has not even reviewed the airworthiness of the Aircraft nor has he provided any opinion as to the reasonable length of time it

---

[3] While Mr. Lavigne's experience qualifies him as an expert in this case, this is not to say that he is impervious to impeachment. It merely means that Defendants' arguments are more appropriately directed at the weight of Mr. Lavigne's opinion, as opposed to his qualifications.

should have taken to replace the missing avionics. Instead, Mr. Lavigne opines that the Aircraft should have been able to generate over $100,000 in profit each month for twenty-seven months between the date of the loss and the date of the expert report without an examination of the history of the Aircraft. Defendants suggest that this is a fatal flaw in Mr. Lavigne's opinion because the Aircraft sat unused at Opa Locka Airport for years prior to the date of the theft. Therefore, Defendants request that Mr. Lavigne's opinions be excluded for relying on nothing more than pure speculation.

In addition, Defendants claim that Mr. Lavigne contacted unknown aviation brokers in forming his opinions. Defendants take issue with this tactic because none of the aviation brokers that Mr. Lavigne relied upon have purportedly been identified to establish their independent reliability as to their knowledge of the Aircraft. Defendants posit that they are now unable to verify if any of the knowledge that Mr. Lavigne received was sound and that his opinions must be excluded as a result.

"The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically

valid." *Id.* at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

There is no doubt that Defendants have presented a plethora of reasons as to why a jury should not consider Mr. Lavigne's opinions to be controlling. The problem with these arguments is that none of them are sufficient for a wholesale exclusion under *Daubert*. Take, for instance, Defendants' argument that Mr. Lavigne failed to evaluate the plane's airworthiness, the plane's logbooks, or the fact that the plane sat on a ramp at the airport for years prior to the date of the theft. None of these arguments undermine the methodology that Mr. Lavigne used in calculating the damages that Plaintiffs sustained.

Instead, the methodology is premised on profits, costs, number of flight hours, and revenue loss. Defendants take exception with these calculations because they are entirely unsupported. But, Mr. Lavigne's calculations rely, in part, on his nineteen years of experience managing aircraft fleet costs and his gathering of data on operational costs. Defendants then claim that Mr. Lavigne must be excluded because he relied on unknown brokers for price and hour data. This is also an insufficient reason to strike Mr. Lavigne because – even if more accurate evidence could have been obtained – Defendants have not shown that Mr. Lavigne is

unreliable under *Daubert*. In fact, an expert "may rely on hearsay if it is of the type of evidence reasonably relied on by experts in the particular field." *United States v. Allen*, 190 F. App'x 785, 787 (11th Cir. 2006); *see also* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). And given that Mr. Lavigne testified that private luxury aircraft owners do not publish their rates and hours, there is sufficient evidence in this record that an expert must acquire market data from brokers. Defendants may, of course, challenge the accuracy of this representation and the data that Mr. Lavigne relies upon but that again goes to weight – not admissibility.

In a final attempt to undermine Mr. Lavigne, Defendants claim that they had no way of verifying the brokers that provided data to Mr. Lavigne in his evaluation of Plaintiffs' damages. But, this is inaccurate because, during Mr. Lavigne's deposition, he specifically identified the brokers' names, backgrounds, and contact information that he relied upon. He also described their knowledge in the aviation field and explained how he chose them for the data he needed to render an opinion. [D.E. 73-2]. If Defendants wanted to learn more about these brokers and the data that they provided, they had an opportunity to do so. They could have, for example, interviewed the brokers and examined the specifics underlying the data that they gave to Mr. Lavigne. Yet, Defendants apparently chose not to do so and that decision has no bearing on whether Mr. Lavigne is now unreliable. Therefore, Defendants' motion to exclude Mr. Lavigne as an unreliable expert is **DENIED**.

### C. *Whether Mr. Lavigne's Opinions are Helpful*

The final factor to consider is whether an expert will be helpful to the trier of fact. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). While "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Delatorre,* 308 F. App'x at 383). The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

Defendants claim that Mr. Lavigne's opinions will not assist the trier of fact because they rely on unsupported data that will merely serve to confuse the jury. The Court need not give much consideration to this argument because it is merely a subset of the reliability prong that we have already considered. "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech*, 326 F.3d at 1341. Defendants have done exactly what the Eleventh Circuit has cautioned against because they have conflated the reliability and helpfulness prong without any new reasons in support of the latter. Because we have considered the facts and

assumptions underlying Mr. Lavigne's opinions and found that they are more appropriately directed at their weight – as opposed to their admissibility – Defendants have not presented a persuasive reason as to how Mr. Lavigne's opinions are unhelpful to the trier of fact. Accordingly, Mr. Lavigne's opinions do not run afoul of the qualifications, reliability, or helpfulness prongs and thus Defendants' *Daubert* motion to exclude them is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' *Daubert* motion to exclude Mr. Lavigne's opinions is **DENIED**. [D.E. 66].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of February, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge