**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 18-22061-WILLIAMS**

ENTOURAGE CUSTOM JETS, LLC, *et al.*

      Plaintiffs,

      v.

AIR ONE MRO, LLC, *et. al.*

      Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**This MATTER** is before the Court on Miami Executive Aviation, LLC's ("Signature") motion for summary judgment (DE 63), Air One MRO, LLC's ("Air One") motion for summary judgment as to Plaintiffs' claims (DE 64), and Air One's motion for summary judgment as to its counterclaims against Entourage Custom Jets, LLC ("Genesis") (DE 65). The motions have been fully briefed. On May 6, 2020, the Court held a telephonic conference, during which the Parties presented oral arguments in support of their briefing. After the Parties made their arguments, the Court made bench rulings **DENYING** each motion in its entirety. This Order summarizes and supplements the Court's bench rulings.[1]

## I.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The Court assumes familiarity with the facts, procedural history, and the Parties' arguments.

1

Fed. R. Civ. P. 56(a).  Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).  The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted).  At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

For issues for which the movant would bear the burden of proof at trial, the party seeking summary judgment "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence…that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the

existence of a triable issue of fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (emphasis in original).

II.   **DISCUSSION**

   A. **Signature's Motion for Summary Judgment (DE 63) is DENIED**

    1. The motion is **DENIED** as to Signature's argument that sections 16.02 and 11.02 of the Space Permit release Signature of its duty to secure the Facility and the aircrafts and property stored within.

        i. The Court finds that a fact question exists as to the intent of the contracting parties to the Master Lease on whether Signature is permitted to delegate its security duties to Air One, thereby releasing Signature of its duty to secure the Facility.

        ii. Contract interpretation is "a question of law" to be decided by the court "by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz v. Wells Fargo Bank, N.A.,* 745 F.2d 1098, 1104 (11th Cir. 2014).  "Under Florida law, if the terms of [a contract] are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). "Although contract interpretation is generally a question of law for the Court, if the contract contains ambiguities, a question of fact for the jury may be presented." *Assa Compania De Seguros, S.A. v. Codotrans, Inc.*, 2014 WL 11906600, at *3 (S.D. Fla. Sept. 12, 2014). "The initial determination of whether the contract term is ambiguous is a question of law for the

court.  Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the [contracting] parties' intent which cannot properly be resolved by summary judgment." *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1131 (Fla. Dist. Ct. App. 2001); *BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. Dist. Ct. App. 2012) ("contractual language is ambiguous [ ] if it is susceptible to more than one *reasonable* interpretation."); *Laufer v. Norma Fashions, Inc.*, 418 So. 2d 437, 439 (Fla. 3d DCA 1982) ("A phrase in a contract is ambiguous when it is uncertain of meaning and disputed.").

iii.  The Court finds sections 16.02 and 11.02 of the Master Lease to be ambiguous as to whether Signature holds a non-delegable duty to secure the Premises.  There is no language in the Master Lease that clearly and unambiguously reflects the contracting parties' intent on whether Signature is either permitted to, or prohibited from, delegating its duty to secure the Premises to its sublessees.  Moreover, the Parties' have presented divergent interpretations of sections 16.01 and 11.01, which the Court finds to be reasonable and supported by the contract language.  *See BKD Twenty-One Mgmt. Co., Inc.*, 127 So. 3d at 530 ("contractual language is ambiguous [ ] if it is susceptible to more than one *reasonable* interpretation.").  Plaintiffs interpretation that these sections establish a non-delegable duty for Signature to secure the Premises is supported by language in section 16.01 stating that

4

Signature accepts "full" and "sole" responsibility for the "security and protection of the Premises."  On the other hand, Signature argues that these sections are intended only to hold Miami-Dade harmless for the cost of securing the Premises, but are not intended to restrict Signature from delegating its security duties to its sublessees.  This reading also finds support in section 16.01's language stating that Premises security "shall involve no cost to the lessor."

iv. Because the Court finds the Master Lease to be ambiguous on whether Signature possessed a non-delegable duty to secure the Premises, the intent of the contracting parties is an issue of fact to be resolved at trial. *See Campaniello v. Amici P'ship*, 832 So. 2d 870, 872 (Fla. Dist. Ct. App. 2002) ("Where each side argues that the contract is clear and unambiguous, but ascribes a different meaning to the 'unambiguous' language, the contract is rendered ambiguous and summary judgment is improper."); *Palazzolo v. Fessler*, 680 So. 2d 607, 608 (Fla. Dist. Ct. App. 1996) ("Where the wording of an agreement is ambiguous and the parties suggest different interpretations, the issue of proper interpretation becomes one of fact precluding grant of summary judgment.").

2. Signature's motion is **DENIED** as to its argument that it cannot be held liable for the subject losses under the doctrine of caveat lessee.

i. Assuming caveat lessee applies to cases involving negligent security, granting summary judgment is nonetheless inappropriate, because an

5

issue of fact exists as to whether Signature maintained a possessory interest over the Facility and control over its security while Air One was its sublessee.  If Signature had retained control over the security of the Facility during the term of Air One's lease, then it cannot rely on caveat lessee to shield itself from liability for the subject losses.  *See Floyd v. City of Sanibel*, 2017 WL 4286430, at \*4 (M.D. Fla. Sept. 27, 2017) ("if City retained control over the Woodhaven, caveat lessee does not apply.").

ii. "Under the doctrine, a lessor or seller cannot be liable for injuries to a buyer or other party caused as a result of a defect existing at the time the property was sold or lease."  *Craig v. Gate Mar. Properties, Inc.*, 631 So. 2d 375, 376 (Fla. Dist. Ct. App. 1994).  "In cases involving a lease, however, the relationship (including possession and control of the lessor over the property) between the owner and the property will not necessarily be totally severed.  The extent of responsibility for injuries occurring on the property during the term of lease will depend upon the extent the owner maintains a possessory interest or control over the instrumentality or land which contains a defect which is alleged to have been a proximate cause of the injuries suffered by a plaintiff.  Thus, while an owner may not be responsible for injuries caused solely by the lessee's operations and activities on the leased premise, the owner may be liable to a third party where they have responsibility for maintenance,

inspection, or oversight under the terms of the lease, or where the owner has maintained a possessory interest in the property." *Id.*

iii.  Signature points to the deposition testimony of its corporate representative, Gonzalo Montoya, who explained that "they [Air One] have pretty much sole control of that space, which is the office and the hangar."  But this testimony is not dispositive.  Plaintiffs have pointed to multiple provisions in the Space Permit showing that Signature maintained control over the Facility, including its security.  For example, paragraph 11 states, "[t]he terms and conditions of this Permit shall be subject and subordinate in all respects to the Master Lease, as amended from time to time, and any provision of such Master Lease required to be addressed herein shall be deemed incorporated herein."  Paragraph 18(a) states that "[Air One] shall not alter the Space in any fashion without the prior written consent of Signature, which may be withheld in Signature's sole discretion."  Paragraph 18(b) states that "Signature is responsible for all routine maintenance and repair to the Space . . ."  Finally, paragraph 34 states "[Air One] shall have no right to assign, transfer, mortgage pledge, hypothecate or encumber this permit or any interest herein or sublet the Space or any part thereof, or permit the use of the Space by any other party without Signature's written consent which may be withheld at its sole discretion."

iv.  Courts have routinely denied the summary judgment motions of landlord defendants where the plaintiffs have pointed to similar lease provisions.

7

*See*, *e.g.*, *Russ v. Wollheim*, 915 So. 2d 1285, 1287 (Fla. Dist. Ct. App. 2005) ("the lease allows the lessee to 'alter, add to and improve the Property subject to Lessor's prior approval.' Thus, 'by way of the lease' the Wollheims retained a possessory interest or control over the very activity Russ alleged resulted in his injuries.' Consequently, as a matter of law the Wollheims were not entitled to summary final judgment in Russ's premises liability action against them.'"); *Craig*, 631 So. 2d at 376 ("In the instant case, there are disputed issues of material fact concerning the level of control over the roadways. The language of the lease appears to provide for a significant level of control over the roads to be retained by Gate."); *see also Keller v. Core-Mark Distributors, Inc.*, 2016 WL 11578799, at *2 (M.D. Fla. Nov. 23, 2016) (denying sublessor's motion to dismiss where "the Plaintiffs allege that Staples retained control under Section 6.2 of the Sublease to approve or disapprove of any additions or alterations to the warehouse. . . The Plaintiffs also allege that under Section 8.3 of the Sublease, Staples 'may enter the Sublease Premises, at reasonable times . . . to make repairs to and/or inspect the Subleased Premises.'").

B. **Air One's motion for summary judgment as to Plaintiffs' Complaint (DE 64) is DENIED**

1. Air One's motion is **DENIED** as to its argument that sections 9.3, 9.4, and 10.1 of the General Terms Agreement ("GTA") bar Genesis from recovering the insurance deductible and "loss of use" damages.

8

i.      The Court finds that, as a matter of law, sections 9.3, 9.4, and 10.1 of the GTA do not bar Genesis from seeking "consequential damages" arising from Air One's negligent security.  Because Plaintiffs' claims against Air One are based on its negligent security, the GTA does not bar Plaintiffs' claims for damages.

ii.     Contract interpretation is "a question of law" to be decided by the court "by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz v. Wells Fargo Bank, N.A.,* 745 F.2d 1098, 1104 (11th Cir. 2014).  The Court's "duty is to interpret the contract as a whole, not each term in a vacuum." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367 (11th Cir. 2018).  "A contract is not to be read so as to make one section superfluous." *Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. Dist. Ct. App. 2013).  "Further, a contract will not be interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so." *Id.*

iii.    When applying the canons of contract interpretation under Florida law, and interpreting the waivers in sections 9.3, 9.4, and 10.1 in the context of the GTA as a whole, the Court finds Air One's reading of these waivers as limiting Air One's liability for "consequential damages" of any kind to be unreasonable.  The more reasonable interpretation is that these waivers are intended only to limit Air One's liability for "consequential damages" arising

from the work services (*i.e.*, repairs, maintenance, and upgrade services) performed by Air One to Genesis' aircraft.

iv.     The surrounding language in sections 9.3, 9.4, and 10.1 appears to limit the scope of the waivers to work services.  Section 9.3 states "AOM's liability in <u>connection the services to the Aircraft</u> is expressly limited to its workmanship."  (emphasis added).  Section 9.4 provides "[i]t is expressly agreed that there are no warranties, expressed, implied, statutory or otherwise . . . <u>for work done, or materials furnished</u>. . . ." (emphasis added). Section 10.1 states "AOM's and Customer's liability <u>in connection with the Services provided pursuant to this GTA and any applicable Workscope</u> shall be limited in accordance with Section 9 and 10 of this GTA."  (emphasis added).

v.     Moreover, the other provisions in section 9 are specifically regarding Air One's responsibility for defects caused by services to customers' aircrafts, suggesting that, as a whole, section 9 relates only to Air One's liability for its work services.   Section 9.1 states "AOM warrants to Customer that Aircraft <u>serviced by AOM and AOM's subcontractors</u> shall be free from material defect in workmanship and shall be completed in accordance with the standards and specifications set forth in this GTA and the applicable Workscope Agreement . . . ." (emphasis added).  Section 9.2 provides "In the event of a suspected failure [of the Aircraft] . . . Upon return and after inspection and review . . . AOM shall have the option of <u>repairing, reworking</u>, or crediting Customer on a pro-rata basis . . . ." (emphasis added).

vi.  Reading these waivers as broadly as Air One suggests would render Section 10.3 of the GTA meaningless, thereby violating the principles of contract interpretation under Florida law.  *See Universal Prop. & Cas. Ins. Co.*, 114 So. 3d at 1036 ("a contract will not be interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so").  Section 10.3 expressly contemplates that Air One would be responsible for indemnifying Genesis for "consequential damages" caused by Air One's negligence.  Thus, if the waivers in sections 9.3, 9.4, and 10.1 limited Air One's liability for "consequential damages" of any kind, then Air One could not be held responsible for damages expressly recognized by section 10.3.  As such, Air One's interpretation would read section 10.3 out of the GTA—a reading the Court finds to be untenable.  *See BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. Dist. Ct. App. 2012) ("where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner.").

vii.  Finally, reading the waivers in sections 9.3, 9.4, and 10.1 as broadly as Air One suggests would violate the principle of Florida contract law that waivers limiting a party's liability for its own negligence must be clear and unequivocal.  *See Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260 (Fla. 2015) ("exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and

11

knowledgeable person will know what he or she is contracting away");

*Fairchild for Use & Benefit of State Farm Fire & Cas. Co. v. W. O. Taylor Commercial Refrigeration & Elec. Co.*, 403 So. 2d 1119, 1120 (Fla. Dist. Ct. App. 1981) ("limitation of liability for one's negligent acts will not be inferred unless the intention is expressed in unequivocal terms.").  When the waivers in sections 9.3, 9.4, and 10.1 are read in the context of their surrounding language, their neighboring sections, and the GTA as a whole, it is not at all "clear and unequivocal" that they are intended to waive "consequential damages" arising from Air One's negligent security.

viii.  Accordingly, the Court finds as a matter of law that the waivers in sections 9.3, 9.4, and 10.1 do not limit Air One's liability for "consequential damages" arising from its negligent security.  In turn, they do not preclude Genesis from seeking damages for the subject losses.[2]

2. The motion is **DENIED** as to its argument that Great American's subrogation claims are barred by section 11.3 of the GTA.

i.  Granting summary judgment is inappropriate because the Court finds the GTA to be ambiguous as to whether Genesis and Air One intended to shift liability for theft and Air One's negligent security to Genesis' insurer.

ii.  "Under Florida Law, parties to a contract may agree to shift their risk of liability to an insurer and waive their individual liability."  *Employers Ins. Co. of Wassau v. Hera GmbH & Co. KG*, 2008 WL 11333564, at *2 (S.D. Fla.

---

[2] Plaintiffs contend that the entire GTA does not apply to this case.  The Court need not reach this argument to decide Air One's motion.

Oct. 1, 2008).  "It is well established that parties to a contract may mutually agree that one party will obtain insurance as part of the bargain, to shift the risk of loss from both of them to the insurance carrier.  If loss occurs, they are deemed to have agreed to look solely to the insurance, without regard to which party was negligent, and subrogation is not allowed."  *Fairchild*, 403 So. 2d at 1120.  In analyzing whether the Parties intended to shift risk of loss to an insurer, the Court examines the contract as a whole, without applying a presumption either in favor of or against subrogation.  *See Zurich Am. Ins. Co. v. Puccini, LLC*, 271 So. 3d 1079, 1082 (Fla. Dist. Ct. App. 2019); *Underwriters of Lloyds of London v. Cape Publ'ns, Inc.*, 63 So.3d 892, 895-96 (Fla. 5th DCA 2011).

iii.   Whether the Parties' intended to shift liability for theft and Air One's negligent security to Genesis' insurer ultimately turns on whether the Parties intended the insurance required by section 11.3— "Hull All-Risks, Ground and Flight Hull War and Allied Perils Insurance and Aircraft Liability Insurance"— to cover these perils.  The GTA does not define this phrase, and there is no "natural, ordinary and plain meaning" that would allow the Court to discern the scope of its coverage.  *United States v. Fla. W. Int'l Airways*, Inc., 853 F. Supp. 2d 1209, 1233 (S.D. Fla. 2012).  Also missing from section 11.3, and in the GTA as a whole, is clear, express language indicating that theft and negligent security are covered risks.[3]  Because the

---

[3] As the Court explained in its Order on Air One's motion to dismiss, "the language of the insurance provision does not mention theft."  (DE 40).

Court is unable to construe from the face of the GTA the Parties' intent as to the scope of the perils covered, the Court finds section 11.3 to be ambiguous.  *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 2003 WL 27384343, at *1 (S.D. Fla. Oct. 20, 2003) ("This contract, which was drafted by the Defendant and, therefore must, as a matter of law be interpreted against the Defendant as the drafter, contains undefined terms which, upon consideration of the plain language of the contract, are ambiguous.  Accordingly, it would be impossible and legally erroneous, for this court to ascribe meaning to these ambiguous terms, thereby replacing the ambiguous contract with a court drafted interpretation thereof.").

iv.   Moreover, the uncertainty of Air One's interpretation of section 11.3—as evidencing the Parties intent to "shift the risk of loss with respect to property damage to the Aircraft for *any reason*"—is evidenced by its conflict with section 4.2, which states, in relevant part, that "AOM's liability for loss or damage to the Aircraft, whether under a tort, contract, bailment, or other basis, and AOM's duty to provide security or to otherwise provide for the safe keeping of the Aircraft shall cease five days after the AOM has advised Customer that the Aircraft is available for redelivery."  Section 4.2 expressly contemplates that Air One could be held liable for loss or damage to the aircraft while it is in its possession.  Accordingly, if the Parties had intended that only Genesis' insurer would be liable for risk of loss to the aircraft under *all* circumstances, then section 4.2 would be rendered meaningless.  *See*

14

*Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 716 (Fla. Dist. Ct. App. 2017) ("This internal contradiction constituted a patent ambiguity").

v.  The GTA's ambiguity as to whether the Parties' intended to shift liability for theft and negligent security to insurance precludes summary judgment. While the Parties have provided secondary sources and affidavits expounding on what the term "Hull All-Risks" means and explaining the contracting parties' intent, the Court cannot, at this stage, find them to be dispositive. Rather, the Parties' intent is a fact question to be determined by a trier of fact at trial. *See Allstate*, 90 F.3d at 1549 ("Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment."); *Assa Compania De Seguros*, 2014 WL 11906600, at *3 ("where the terms of a contract are ambiguous, 'the intent of the parties is an issue of fact.' To construe the disputed provisions in light of the parties' differing constructions, 'the Court will have to delve into questions of intent and credibility, which are improper inquiries at the summary judgment stage.'") (citations omitted); *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 717 (Fla. Dist. Ct. App. 2017) ("the contract may be properly construed only after a consideration of the circumstances under which it was made and the meaning ascribed by the parties to its ambiguous language. The parties must therefore be afforded the opportunity to offer proof, not merely by affidavit or argument, but on a trial of the action").

C. **Air One's motion for summary judgment as to its counterclaim (DE 65) is DENIED**

    1.  Air One's motion is **DENIED** as to its argument that Genesis is liable for breaching Section 11.3 of the GTA.

        i.  The Court finds that granting summary judgment is inappropriate because there is an issue of fact as to "causation of damages," which is "an essential element in order to establish liability for breach of contract." *Walter Int'l Prods., Inc. v. Salinas*, 2009 WL 9113379, at *4 (S.D. Fla. Oct. 26, 2009); *RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, 2010 WL 11553393, at *2 (S.D. Fla. July 20, 2010) (Under Florida law, "[t]he elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."); *Tuttle/White Constructors, Inc. v. Montgomery Elevator Co.*, 385 So. 2d 98, 100 (Fla. Dist. Ct. App. 1980) ("In order to establish liability, the plaintiff must show that the defendant's breach was a 'substantial factor' in causing the injury.").

       ii.  Specifically, there is an issue of fact as to whether Genesis' failure to add Air One as an additional insured as required by section 11.3 caused Air One to incur its alleged damages: the legal expenses for its defense of Great American's subrogation claims.[4]   This fact issue turns on

---

[4] During oral argument, Counsel for Air One conceded that there are issues of fact as to "causation of damages" but requested partial summary judgment as to the undisputed elements of "existence of contract" and "breach."  The Court denies this request, as it was not raised in Air One's motion.  Instead, Air One had requested that "an entry of summary judgment in its favor on its breach of contract claim against Genesis <u>as to liability</u>." (emphasis added).

whether the insurance required by section 11.3 was intended to cover Air One for the subject losses, thereby waiving Great American's right to seek subrogation. For the reasons previously explained, the Court finds section 11.3 to be ambiguous as to the scope of risks that the Parties intended to shift to insurance. Accordingly, the Court cannot, at this juncture, find as a matter of law that had Genesis added Air One as an additional insured, Great American would have been barred from asserting its subrogation claims against Air One.

2. Air One's motion is **DENIED** as to its argument that Genesis is liable for breaching section 10.2 of the GTA.

    i. Summary judgment is inappropriate because there is an issue of fact as to the "material breach" element of this claim. Section 10.2 requires Genesis to indemnify Air One for only those "losses, damages, or expenses" that are "arising out of or <u>caused by</u> . . . Genesis' breach of this GTA." (emphasis added). Accordingly, Genesis would be in material breach of its obligations under section 10.2 if: (1) Genesis' failure to add Air One as an additional insured caused Air One to incur "losses, damages, or expenses," and (2) Genesis neglected to indemnify Air One for these expenses. Summary judgment is inappropriate here. As previously explained, there is an issue of fact as to whether Genesis' failure to add Air One as an additional insured caused Air One to incur legal expenses for the defense of Great American's subrogation claims.

III.    **CONCLUSION**

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that:

1.  Signature's motion for summary judgment (DE 63) is **DENIED**.

2.  Air One's motion for summary judgment as to Plaintiffs' complaint (DE 64) is
    **DENIED**.

3.  Air One's motion for summary judgment as to its counterclaims (DE 65) is
    **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>8th</u> day of May, 2020.


KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE